```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**WILLIAM RASPET, JR.;**
**and DONNA RASPET,**

        **Plaintiffs,**

    **v.**                //      CIVIL ACTION NO. 1:18CV19
                                    (Judge Keeley)

**SHELLPOINT MORTGAGE SERVICING,**
**a Division of New Penn Financial, LLC;**
**and THE BANK OF NEW YORK MELLON, f/k/a**
**The Bank of New York, as Trustee on**
**Behalf of the Holders of CWABS, Inc.,**
**Asset Backed Certificates, Series 2005-10,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFFS' MOTION TO REMAND [DKT. NO. 7]**

On December 7, 2017, the plaintiffs, William and Donna Raspet (collectively, "the Raspets"), filed a complaint in the Circuit Court of Harrison County, West Virginia, against defendants Shellpoint Mortgage Servicing, A Division of New Penn Financial, LLC ("Shellpoint"), and The Bank of New York Mellon, f/k/a The Bank of New York, As Trustee, on Behalf of the Holders of CWABS, Inc., Asset Backed Certificates, Series 2005-10 ("BONY") (Dkt. No. 1-1). In reliance on diversity jurisdiction under 28 U.S.C. § 1332, Shellpoint and BONY removed the case to this Court on January 26, 2018 (Dkt. No. 1). The Raspets moved to remand, contending that Shellpoint and BONY failed to establish that the amount in controversy exceeds $75,000. For the reasons that follow, the Court **DENIES** the Raspets' motion (Dkt. No. 7).

**RASPET V. SHELLPOINT, ET AL.**                                      **1:18CV19**

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION TO REMAND [DKT. NO. 7]**

**I. BACKGROUND**

According to the Raspets, "[t]his case involves mortgage loan servicer abuse and seeks to rescind the needless foreclosure of [their] home" (Dkt. No. 1-1 at 4). On June 24, 2005, the Raspets entered into a $142,400 mortgage loan with Countrywide Home Loans, Inc., which was secured by their home at 108 Jennifer Lane, Bridgeport, West Virginia. Id. at 4-5. Unfortunately, they "suffered a significant reduction of household income in 2011 when . . . Donna Raspet became disabled." By 2014, the Raspets had fallen behind on their mortgage payments, but were able to obtain a loan modification. Id. at 5. In 2016, however, "William Raspet, Jr. was forced to take alternative employment at a significant reduction of income." Id. at 6.

On December 1, 2016, Shellpoint began servicing the Raspets' mortgage loan, now held by BONY. Id. at 5-6. Shellpoint solicited the Raspets to apply for a further loan modification that would lower their payment and bring the loan current. Id. at 6. Although the Raspets submitted a complete loan modification application on January 12, 2017, Shellpoint erroneously advised that they had failed to include necessary pay stubs and an IRS Form 4506-T. Consequently, the Raspets again provided the necessary documents and continued to allow their arrears to grow based on Shellpoint's

"representations of assistance." Id. On April 27, 2017, Shellpoint notified the Raspets that their application had been denied, and that it was closing their file for failure to provide the requested documents. Thereafter, the defendants sold the Raspets' home at a foreclosure sale. Id.

In their complaint filed in state court, the Raspets contend that the defendants wrongfully caused them "economic loss, annoyance and inconvenience, stress and worry, and fear of the loss of their home," through the defendants' negligent acts and violations of the West Virginia Consumer Credit and Protection Act. Id. at 7-8. The Raspets seek actual damages, civil penalties, and appropriate equitable relief, including rescission of the defendants' foreclosure sale of their home. Id. at 1, 7-8.

On January 26, 2018, Shellpoint and BONY, both diverse from the Raspets, removed the case to this Court (Dkt. No. 1). To establish the amount in controversy, they attached to their notice of removal proof that the value of the deed of trust was $142,400, the Raspets' property is assessed for $202,900, and the property sold for $181,129.43 at the August 2017 foreclosure sale. The defendants subsequently filed their answer on February 2, 2018 (Dkt. No. 3). On February 23, 2018, the Raspets filed the pending motion to remand, in which they argue that the value of their home

is not the appropriate measure of the amount in controversy (Dkt. No. 7).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." See also King v. Marriott Int'l, Inc., 337 F.3d 421, 424 (4th Cir. 2003). Nonetheless, "federal courts, unlike state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations," Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008), and federalism counsels that removal jurisdiction should be strictly construed. Palisades Collections LLC v. Shorts, 552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)).

"The burden of establishing federal jurisdiction is placed upon the party seeking the removal." Mulcahey v. Columbia Organic Chems., Inc., 29 F.3d 148, 151 (4th Cir. 1994). As this Court has previously noted, "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction," and thus remanding a case to state court. Vitatoe v. Mylan

Pharmaceuticals, Inc., 1:08cv85, 2008 WL 3540462, at *2 (N.D.W.Va. Aug. 13, 2008) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)).

When a removing defendant relies on diversity jurisdiction, and the plaintiff "does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (alteration in original) (quoting De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)). "[T]he test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lolly, 327 F.2d 568, 569 (4th Cir. 1964)). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Francis, 709 F.3d at 367 (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)); see also Lang v. Wells Fargo Home Mortgage, Inc., No. 3:13-CV-60, 2013 WL 12210772, at *3-*4 (N.D.W.Va. Sept. 23, 2013).

### III. DISCUSSION

The question presented is whether the Raspets have placed the full value of their home at issue in this litigation by seeking "to rescind the needless foreclosure of [their] home" (Dkt. No. 1-1 at 4). The Court concludes that the value of the Raspets' home is the appropriate measure of the amount in controversy, and that the defendants have met their burden to establish by a preponderance of the evidence that the value of the Raspets' home exceeds $75,000.

A plaintiff seeking to rescind a foreclosure sale places the value of the home at issue in the litigation. In <u>Hudak v. Selene Finance LP</u>, the plaintiffs secured a $130,845 mortgage loan. Five years later, they filed for bankruptcy, and were discharged from their personal obligation on the loan. No. 1:15-CV-20, 2015 WL 1539740, at *1 (N.D.W.Va. Apr. 7, 2015) (Keeley, J.). Nonetheless, the plaintiffs continued to make regular payments until about a year later. When the plaintiffs fell behind, the servicer rejected their request for a loan modification and scheduled a foreclosure sale. The plaintiffs filed a lawsuit against the servicer in state court, seeking specific performance of the servicer's contractual obligation to engage in an appropriate loss mitigation review prior

to accelerating the loan and foreclosing on their home. Id. at *1-*2.

The loan servicer removed the case, asserting that the amount in controversy was satisfied by either the $130,000 value of the deed of trust or the $119,000 unpaid balance of the loan. Id. at *2. The plaintiffs moved to remand, contending that the relief actually sought from the loan servicer, loss mitigation review, would cost it much less than $75,000. Id. at *3. The Court rejected this argument, reasoning that it improperly discounted the value of the litigation to the plaintiffs:

> The Hudaks go to great lengths to demonstrate that loss mitigation review would cost Selene very little, if anything. Their focus on Selene, however, overlooks the potential value of loss mitigation review from their perspective. For the Hudaks, the value is not found in the review process itself, but rather derives from the potential that, as a consequence of the review process, they will avoid foreclosure and the loss of their home. As they have asserted in their complaint, "Plaintiffs bring this suit to save their family home."
>
> Thus, from the Hudaks' perspective, the pecuniary value resulting from an award of specific performance would be no less than the value of the home, for which they were obligated to pay $130,845.

Id. at *4 (internal citation omitted).

Other courts in this District have reached a similar result. In Schubert v. Federal National Mortgage Assocation, No. 5:12-CV-166, 2013 WL 12137236 (N.D.W.Va. Mar. 25, 2013) (Bailey, J.), the plaintiffs filed a lawsuit that sought, in part, $60,000 in

compensatory damages and "a declaratory judgment setting aside the trustee's sale of the real property valued at $39,500 and for which Fannie Mae paid $30,453.03 at the trustee sale." Id. at *1. When the defendants removed the case, the plaintiffs argued that the amount in controversy requirement was not satisfied. The court acknowledged that, "[w]hen a plaintiff seeks declaratory relief, the amount in controversy for purposes of section 1332 is the 'value of the object of the litigation.'" Id. at *3 (internal citation omitted). Further, "[i]n a wrongful foreclosure action, the amount in controversy is the value of the property," id. at *3 (citing Campos v. U.S. Bank Nat'l Ass'n, No. 4:12cv2236, 2012 WL 5828619, *5 (S.D. Tex. Nov. 13, 2012)):

> In this case, the plaintiff purchased the property for $32,000. The plaintiff borrowed $40,400 from defendant Bank of America and secured the loan with a deed of trust on the property at issue in this case. Defendant Fannie Mae purchased the property for $30,453.03. The property was appraised by the Marshall County Assessor's Office at $39,500. Without determining which number represents the value of the property, this Court notes that even the lowest figure ($32,000) establishes the amount in controversy requirement when combined with the $60,000 compensatory damages sought by the plaintiff.

Id. at *4 (internal citation omitted). For these reasons, the court denied the plaintiffs' motion to remand. Id.[1]

---

[1] Other district courts in the Fourth Circuit also have held that, when a plaintiff seeks rescission of a foreclosure sale, the

8

**RASPET V. SHELLPOINT, ET AL.**                                      **1:18CV19**

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFFS' MOTION TO REMAND [DKT. NO. 7]**

Here, the Raspets filed suit against Shellpoint and BONY after the foreclosure sale of their property had already occurred, and their complaint seeks "to rescind the needless foreclosure of the Plaintiffs' home" (Dkt. No. 1-1 at 4). As in Hudak, the pecuniary value to the Raspets of setting aside the foreclosure "is no less than the value of the home," which is "the object of the litigation." No. 1:15-CV-20, 2015 WL 1539740, at *4; Schubert, No. 5:12-CV-166, 2013 WL 12137236, at *3. The defendants have presented evidence that the value of the deed of trust was $142,400.00, the property is assessed for $202,900.00, and the property sold for $181,129.43 at foreclosure (Dkt. No. 10 at 10). Regardless which figure most accurately represents the value of the Raspets' home, any would satisfy the amount in controversy. Therefore, Shellpoint and BONY have met their burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

The Raspets' argument to the contrary is not convincing. They contend that "[t]his Court has held that when a plaintiff seeks equitable relief involving a mortgage, the full balance of the

---

amount in controversy is properly measured by the value of the property. See, e.g., Wright v. U.S. Bank N.A., No. 3:14-CV-775, 2015 WL 12839124, at *2 (E.D. Va. Jan. 7, 2015) (Hudson, J.); Harrell v. Caliber Home Loans, Inc., 995 F. Supp. 2d 548, 550-51 (E.D. Va. 2014) (Smith, C.J.).

mortgage loan is not at issue" (Dkt. No. 8 at 6). The cases offered in support are distinguishable and make clear that the Raspets' argument is too broad.

For instance, in Bohigian v. Flagstar Bank, FSB, the plaintiff alleged that her loan servicer "engaged in abusive loan servicing by assessing unjustified property inspection fees and by impairing her contractual right to reinstate her mortgage." No. 1:11cv181, 2012 WL 112322, at *1 (N.D.W.Va. Jan. 12, 2012) (Keeley, J.). As partial relief for her breach of contract claim against the loan servicer, the plaintiff asked "[t]he Court to enjoin the Defendant from taking possession or scheduling foreclosure of Plaintiff's home." When it removed the case, the servicer argued that this request for relief would cost it $101,938, the outstanding balance of the loan. Id. at *2-*3. The Court rejected this argument, reasoning that neither a temporary nor permanent injunction against foreclosure would necessarily place the full balance of the loan at issue because foreclosure was not "the defendant's only avenue for enforcing its loan." Id. at *3. In any event, the servicer had not provided evidence of the outstanding balance, and the Court remanded the case to state court. Id.[2]

---

[2] See also Kelford v. Bank of Am., N.A., No. 1:11CV146, 2011 WL 5593790, at *3-*4 (N.D.W.Va. Nov. 17, 2011) (reasoning that a

Similarly, in Stottlemire v. Caliber Home Loans, Inc., the plaintiffs filed suit against their mortgage servicer to stop the scheduled foreclosure sale of their home and force the servicer to engage in loss mitigation review (Civil No. 1:16cv118, Dkt. No. 1-3 at 1). As in Bohigan, the court in Stottlemire reasoned that the amount in controversy was "not measured by the worth of the Plaintiffs' home. Rather, it [was] measured by the claims alleged and the relief requested in the complaint." Stottlemire v. Caliber Home Loans, Inc., No. 1:16-CV-118, 2017 WL 282419, at *2 (N.D.W.Va. Jan. 20, 2017) (Groh, C.J.). Analyzing the plaintiffs' claims for statutory penalties, attorney fees, actual damages, and punitive damages, the court determined that the defendants had not met their burden to establish the amount in controversy and granted the plaintiffs' motion to remand. Id. at *3.

Finally, in Addington v. Loandepot.com, LLC, the plaintiffs filed suit prior to the scheduled foreclosure sale of their home, alleging that defendants were liable for breach of contract and numerous statutory violations. No. 2:17-CV-104, 2017 WL 4685428, at

---

request for injunctive relief to prevent a foreclosure sale did not place the original principal balance of the loan at issue); Winnel v. HSBC Mortg. Services, Inc., No. 2:11-cv-00561, 2011 WL 5118805, at *3 (S.D.W.Va. Oct. 28, 2011) (reasoning that the amount in controversy is met by the remaining balance of the loan only when the plaintiff seeks to enjoin a sale that is the only recourse).

*1 (N.D.W.Va. Oct. 18, 2017) (Bailey, J.). The defendant argued that, because the plaintiffs sought specific performance of the loan agreement, they had effectively placed the balance of the mortgage loan at issue. The court disagreed, reasoning that "the object of litigation in a declaratory judgment action only includes the object <u>actually at issue</u>, not the 'ultimate strategic goal' of litigation." <u>Id.</u> at *4 (emphasis in original). Although "[t]he plaintiffs may . . . ultimately [have] wish[ed] to prevent their home from being foreclosed upon, . . . the object <u>actually at issue in th[e] litigation</u>" was whether the loan servicer had satisfied its pre-foreclosure obligations under the parties' contract. <u>Id.</u> at *5 (emphasis in original). The court concluded that the defendants had failed to meet their burden to establish that the amount in controversy exceeded the jurisdictional requirement. <u>Id.</u>

The common thread among these cases is that they were filed prior to any foreclosure sale and did not necessarily implicate the value of the property at issue in the litigation. By contrast, the Raspets have conceded that they "seek the rescission of the foreclosure sale . . . to be provided loss mitigation" (Dkt. No. 11 at 1). Rescission of the defendants' foreclosure sale is not merely the "ultimate strategic goal" of this litigation, <u>Addington</u>, No. 2:17-CV-104, 2017 WL 4685428, at *4, but rather is a necessary

component of the relief in controversy. As already noted, rescission of the foreclosure sale has a value to the Raspets in an amount equal to the value of their home. Hudak, No. 1:15-CV-20, 2015 WL 1539740, at *4; Schubert, No. 5:12-CV-166, 2013 WL 12137236, at *3.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** the Raspets' motion to remand (Dkt. No. 7), and directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

It is so **ORDERED**.

DATED: April 13, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE